# E<small>XHIBIT</small> A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: | : | Chapter 11 |
|  | : |  |
| UNITED GILSONITE LABORATORIES, | : | Case No. 5:11-bk-020232 (RNO) |
| A PENNSYLVANIA CORPORATION,[1] | : |  |
|  | : |  |
| DEBTOR. | : |  |
|  | : |  |

## ORDER (A) AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c), 364(d), AND 507(b); (B) AUTHORIZING THE USE OF CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING OTHER RELIEF; AND (E) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "**Motion**"), dated March 31, 2011, of United Gilsonite Laboratories ("**Debtor**"), as party to the DIP Financing Documents (as defined below) as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case (the "**Case**"), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1)      authorization and approval for Debtor to obtain post-petition loans, advances and other financial accommodations (the "**DIP Facility**") on an interim basis for a period through and including the date of the Final Hearing (as defined below) from PNC Bank, National Association, in its capacity as agent (in such capacity, the "**Agent**") for itself and the other financial institutions from time to time party to the DIP Credit Agreement (as defined below) as lenders (collectively, the "**Lenders**") in an aggregate amount up to $8,200,000

---

[1]  The last four digits of the Debtor's federal tax identification number are 7530.

074658.01343/22001202v.6

(inclusive of the PC Card Facility described herein) and otherwise in accordance with this Order, secured by first priority perfected security interests in and liens, senior and above all other liens upon all of the DIP Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(2) authorization for Debtor to enter into the DIP Credit Agreement[2] with the Agent and the Lenders, substantially in the form attached hereto as **Exhibit 1** (the "**DIP Credit Agreement**"), which shall reflect in all material respects the terms and conditions set forth in this Order (the DIP Credit Agreement, this Interim Order and the Final Order (as defined below) together with all other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**")[3], and to borrow upon entry of this Interim Order, up to an aggregate principal amount not to exceed $1,500,000 to be used in part for working capital and the issuance of letters of credit;

(3) modification of the automatic stay to the extent hereinafter set forth and waiving the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h);

(4) authorizing the Debtor to use cash collateral of Agent and Lenders as defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), solely to the extent there are no borrowings under the DIP Credit Agreement, and subject to the terms of the Budget;

---

[2] Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the DIP Credit Agreement.

[3] On June 12, 2007, Debtor entered into a Visa Purchasing Card Agreement with PNC Bank, National Association (herein, the "**PCard Facility**") which provided Debtor and its employees with credit cards for business purchases with a maximum credit limit of $200,000. On the Petition Date, the balance outstanding under the PCard Facility was approximately $943.23 and total obligations incurred and payments made under the PCard Facility in the ninety (90) days preceding the Petition Date were $4,643.32 and the average daily balance for the one hundred day period preceding the Petition Date was $1,200.00. Debtor has requested that Agent and Lenders continue to permit Debtor and its employees to use the PCard Facility and Agent and Lenders have agreed to permit such continuation subject to the terms of this Order. Accordingly, the DIP Financing Documents once approved by this Order, shall include, and shall be deemed to include for all purposes in this Interim Order, a ratification of the documents evidencing the PCard Facility, the obligations of which shall be secured by the DIP Collateral granted to Agent and Lenders in this Order.

074658.01343/22001202v.6

(5)      the grant to the Agent, for the benefit of itself and the other Lenders, of superpriority administrative claim status pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Order in respect of all Obligations (as defined below) and as set forth below; and

(6)      the setting of a final hearing on the Motion (the "**Final Hearing**") for entry of a final DIP financing Order (the "**Final Order**").

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "**Notice**") having been served by Debtor in accordance with Rule 4001(c) on (i) the Agent and the Lenders, (ii) the United States Trustee for the Middle District of Pennsylvania (the "**U.S. Trustee**"), (iii) the holders of the twenty (20) largest unsecured claims against Debtor's estates (the "**20 Largest Unsecured Creditors**"), (iv) each of Debtor's Management Banks; (v) the United States Securities and Exchange Commission; (vi) the United States Attorney for the Middle District of Pennsylvania; (vii) the Internal Revenue Service and all taxing authorities of states in which Debtor is doing business; and (viii) certain other parties identified in the certificates of service filed with the Court (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on April 7th, 2011 (the "**Interim Hearing**").

Upon the record made by Debtor at the Interim Hearing, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]:

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim Order (defined below) to the extent non inconsistent herewith.

A.  Petition.  On March 23, 2011 (the "**Petition Date**"), Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code.  Debtor continues to operate its businesses and manage its properties as Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.  Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Order of Referral of Bankruptcy Matters of the United States District Court for the Middle District of Pennsylvania dated July 26, 1984, Misc. No. 84-0203.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Notice.  Under the circumstances, the Notice given by Debtor of the Motion, the Interim Hearing and the relief granted under this Order complies with Bankruptcy Rule 4001(c).

D.  Preliminary Findings Regarding the DIP Facility.

(i)  DIP Facility.  Debtor has requested from the Agent and the Lenders, and the Agent and the Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this Order and the DIP Financing Documents.  Debtor has also requested that the Agent make the PCard Facility available on a post petition basis and Agent is willing to do so provided that outstanding balance as of the Petition Date is paid in full and all obligations under the PCard Facility are secured by the DIP Collateral and the PCard Agreement is deemed part of the DIP Financing Documents.

074658.01343/22001202v.6

(ii)  <u>Business Judgment</u>. The terms of the DIP Financing Agreement, the DIP Financing Documents, the DIP Facility and the PCard Facility are fair and reasonable and reflect Debtor's exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(iii)  <u>Need for DIP Facility</u>. Debtor requires sufficient available sources of working capital to operate Debtor's businesses in the ordinary course.  The initial advance under the DIP Facility will be used for working capital and the payment of expenses due to Agent.  Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to Debtor's continued viability.  The ability of Debtor to obtain sufficient working capital and liquidity through the proposed DIP Facility on the terms set forth in the DIP Financing Documents and this Order is vital to the preservation and maximization of the going concern value of Debtor's currently operating businesses and a successful reorganization.  Accordingly, Debtor has an immediate need to obtain the DIP Facility in order to, among other things, permit the orderly continuation of the operation of its operating businesses, preserve jobs for its employees, maintain vendor support and minimize the disruption of its business operations, manage and preserve the assets of Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "<u>**Estate**</u>") in order to maximize the recoveries to creditors of the Estate.

(iv)  <u>No Credit Available on More Favorable Terms</u>. Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on all or substantially all of

074658.01343/22001202v.6

Debtor's assets pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code. Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the Agent and the Lenders pursuant to the DIP Financing Documents and this Order.

(v)     <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. The terms of the DIP Financing Documents and this Order are fair, just, reasonable and appropriate under the circumstances, reflect Debtor's exercise of its prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Financing Documents and this Order have been negotiated in good faith and at arms' length by and among Debtor, on one hand, and the Agent and the Lenders, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the Agent and the Lenders as that term is used in Section 364(e) of the Bankruptcy Code.

(vi)     <u>Good Cause</u>. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit Debtor and its Estate, as its implementation will, among other things, provide Debtor with the necessary liquidity to (a) minimize disruption to Debtor's on-going businesses and on-going operations, (b) preserve and maximize the value of Debtor's Estate, and (c) avoid immediate and irreparable harm to Debtor, its businesses, its employees and its assets.

(vii)     <u>No Responsible Person</u>. Neither the Agent nor the Lenders, as applicable, shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person", "owner or operator" or part of any "control group" with respect to the Debtor or the management of the Debtor by virtue of the financing of the Debtor's operations

6

through the DIP Facility, in administering any loans, in approving any Budget, or in taking any actions permitted by this Order or the DIP Financing Documents.

(viii)    Immediate Entry.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2) and to the extent applicable Bankruptcy Rule 6003.  No party appearing in the Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "**Interim Order**."

1.2    Authorization to Borrow and Use of Loan Proceeds.  Debtor is hereby authorized and empowered to immediately borrow and obtain Advances (and, at the discretion of the Agent and the Lenders, Letters of Credit) and to incur indebtedness and obligations owing to the Agent and the Lenders on the terms and subject to the conditions set forth in the DIP Financing Documents (including without limitation, the documents evidencing the PCard Facility) and this Interim Order, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "**Interim Financing Period**"); in such amounts as may be made available to Debtor by Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Financing Documents, but in an amount not to exceed $1,500,000.00.  Debtor shall

7

Case 5:11-bk-02032-RNO    Doc 57-1    Filed 04/01/11    Entered 04/01/11 11:09:27    Desc
Exhibit A    Page 8 of 30

use the proceeds of the Advances and any other credit accommodations provided to Debtor pursuant to the terms and conditions of the DIP Financing Documents and this Interim Order and in accordance with the budget attached hereto as **Exhibit 2**.

      1.3    <u>Financing Documents</u>.

      1.3.1    <u>Authorization</u>. Debtor is hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement.

      1.3.2    <u>Approval</u>. The DIP Financing Documents and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the financing arrangements by and among Debtor, the Agent and the Lenders, and of Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Financing Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, DIP facility fee and other fees and expenses, including, without limitation, all of the Agent's and the Lenders' consultant fees, professional fees, attorney fees and legal expenses, in accordance with and as more fully set forth in the DIP Financing Documents. The Debtor is authorized to use available Cash Collateral of the Agent and Lenders, solely to the extent there are no Obligations outstanding and in accordance with the Budget.

      1.3.3    <u>Amendment</u>. Subject to the terms and conditions of the DIP Financing Documents, Debtor, the Agent and the Lenders may amend, modify, supplement or waive any provision of the DIP Financing Documents (an "**Amendment**") without further

074658.01343/22001202v.6

approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the DIP Credit Agreement, increase the Maximum Revolving Advance Amount (as defined in the DIP Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the Agent and the Lenders following an event of default) and is undertaken in good faith by Debtor, the Agent and the Lenders; (ii) the Debtors provide prior written notice of the Amendment (the "**Amendment Notice**") to (x) the United States Trustee's office and (y) counsel to any official committee appointed in the Cases under Section 1102 of the Bankruptcy Code (collectively, the "**Committee**"), or in the event no such Committee is appointed at the time of such Amendment, the 20 Largest Unsecured Creditors; (iii) the Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date of the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section.

1.4     Payments and Application of Payments. Debtor is authorized and directed to make all payments and transfers of Debtor's' Estate property to the Agent and the Lenders as provided, permitted and/or required under the DIP Financing Documents, which payments and transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Lender under Section 547, 548, 549, 550, 553 or any other Section of the Bankruptcy Code, or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. The Agent and the Lenders shall apply the proceeds of the DIP Collateral (as defined below), and any other amounts or payments received by the Agent and the Lenders to the Obligations (as defined in the DIP Credit Agreement) in accordance with the DIP

074658.01343/22001202v.6

Financing Documents and this Interim Order, until indefeasibly paid in full and completely satisfied and the DIP Facility has been terminated, in each case in such order and manner determined by Agent. Without limiting the generality of the foregoing, Debtor is authorized and directed, without further order of this Court, to pay or reimburse the Agent and the Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent and the Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Interim Order, all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral. In addition, the Debtors are hereby authorized to indemnify the Agent and the Lenders (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Financing Documents, to the extent set forth in the DIP Financing Documents. All such indemnities of the Agent and the Lenders shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the Obligations under this Interim Order and the DIP Financing Documents.

        1.5    <u>Validity of DIP Loan Documents</u>. The DIP Financing Documents and the Obligations shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto, enforceable against Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Case, in accordance with the terms of the DIP Financing Documents or this Interim Order and not subject to subordination or avoidance for any purposes in the Case. Any Advances advanced under the DIP Credit Agreement will be made only to fund (i) the Debtor's working capital and

074658.01343/22001202v.6

general corporate needs, (ii) current interest and fees under the DIP Facility, (iii) any allowed administrative costs and expenses of the Case, and in each case, solely to the extent permitted under the DIP Credit Agreement, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement and this Interim Order, in each case, to be used in accordance with the Budget. No obligation, payment, transfer or grant of security under the DIP Financing Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

1.6     <u>Obligations</u>.  The Obligations: (i) shall be evidenced by the books and records of the Agent or the Lenders; (ii) shall bear interest in the amounts set forth in the DIP Credit Agreement and in accordance with the PCard Agreement as applicable; (iii) shall be secured in the manner specified in this Interim Order; (iv) shall be payable in accordance with the terms of the DIP Financing Documents; and (v) shall otherwise be governed by the terms set forth herein and in the DIP Financing Documents.

1.7     <u>Interest and Fees Under the DIP Facility</u>.  The rate of interest to be charged for the Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.  The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.  The interest and fees charged under the PCard Facility shall be subject to the terms of the PCard Agreement.

1.8     <u>Cash Management Procedures</u>.

1.8.1     Each of Debtor's Banks (as defined below) (including for purposes herein, the Agent and Lenders) is authorized to debit Debtor's accounts in the ordinary course of

074658.01343/22001202v.6

business without the need for further order of this Court for: (i) all checks drawn on Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the cash management system.

        1.8.2   Any of Debtor's Banks may rely on the representations of Debtor with respect to whether any check or other payment order drawn or issued by Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by Debtor as provided for herein.

        1.8.3   All existing deposit agreements between Debtor and its existing depository and disbursement banks (collectively, the "Banks") shall continue to govern the post-petition cash management relationship between Debtor and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, Debtor and the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, including any collection and/or deposit accounts and lockbox accounts to the extent required in connection with the DIP Financing Documents.

074658.01343/22001202v.6

Section 2.    Liens on all Assets and Superpriority Administrative Claim Status.

2.1.1    DIP Liens.    As security for the Obligations, the Agent, for the benefit of the Lenders, is hereby granted as of the Petition Date, valid, enforceable, binding, first priority and fully perfected security interests in and liens upon (such security interests and liens collectively, the "**DIP Liens**"), all present and after-acquired property of the Debtor of any nature whatsoever, including, without limitation, all accounts receivable, inventory, general intangibles, chattel paper, real property, leaseholds, fixtures, machinery and equipment, deposit accounts, cash and cash equivalents, investments, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property and all causes of action whether pursuant to federal or state law, including, all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Actions**") of the Debtor or its estate and any and all rents, issues, products, offspring, proceeds and profits generated by any of the foregoing (collectively, the "**DIP Collateral**"); provided however, that the liens on the Avoidance Actions shall not be effective until the entry of the Final Order.  The DIP Liens shall be:

a.    Liens on Unencumbered Assets.    Pursuant to section 364(c)(2) of the Bankruptcy Code, continuing valid, enforceable, first priority, fully-perfected liens on and security interests in all of the Debtor's right, title, and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date.

b.    Liens on Encumbered Assets.    Pursuant to section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully

074658.01343/22001202v.6

perfected lien on and security interest (other than as set forth in clause (c) below) in all of the Debtor's right, title, and interest in, to and under all DIP Collateral which is subject to, as of the Petition Date, a Permitted Encumbrance that was perfected prior to the Petition Date or that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

    c. <u>Priming Liens on Encumbered Assets</u>. Subject only to a Permitted Encumbrance, pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtor's right, title, and interest in, to and under all DIP Collateral.

    d. <u>Liens Senior to Certain Other Liens</u>. Notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date.

    2.1.2 <u>Post-Petition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of Debtor (a "**Perfection Act**"). Notwithstanding the foregoing, if the Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, the Agent is authorized to perform such act, and Debtor is authorized and directed to perform such act to the extent necessary or required

074658.01343/22001202v.6

Case 5:11-bk-02032-RNO Doc 57-1 Filed 04/01/11 Entered 04/01/11 11:09:27 Desc
Exhibit A Page 15 of 30

by the Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The Agent and the Lenders may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

2.1.3 <u>Nullifying Pre-Petition Restrictions to DIP Facility</u>. Notwithstanding anything to the contrary contained in any agreement, contract, lease, document, note or instrument to which Debtor is a party or under which Debtor is obligated, any provision that restricts, limits or impairs in any way Debtor from granting the Agent and the Lenders security interests in or liens upon any of Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which Debtor is a party), or otherwise entering into and complying with all of the terms, conditions and provisions hereof, or the DIP Financing Documents shall not (i) be effective and/or enforceable against Debtor, the Agent and the Lenders, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Agent and the Lenders pursuant to this Interim Order, the DIP

074658.01343/22001202v.6

Financing Documents or otherwise, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2 <u>Superpriority Administrative Expense</u>. For all Obligations arising pursuant to this Interim Order, the DIP Financing Documents or otherwise, the Agent, for the benefit of itself and the other Lenders, is granted an allowed superpriority administrative claim in Debtor's Estate pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, <u>inter alia</u>, Sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503, 506(c) (upon entry of the Final Order), 507, 546, 726, 1113 or 1114 of the Bankruptcy Code or otherwise including without limitation those arising from a conversion of the Case to Chapter 7 (the "**Superpriority Claim**").

2.3 **Carve-Out**. The Agent's and the Lenders' liens, claims and security interests in the DIP Collateral and their Superpriority Claim shall be subject only to the following expenses (the "**Carve-Out**"): (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. Section 1930(a)(6) ("**Statutory Fees**"); and (ii) upon the occurrence of any Event of Default and delivery of a written notice to counsel for the Debtor, the U.S. Trustee and counsel for the Committee, which expressly states that the application of the Carve-Out has occurred (a "**Carve-Out Trigger Notice**"), subject to the terms and conditions of this Interim Order, (solely to the extent set forth in the Budget and to the extent that such fees and disbursements remain unpaid following the application of all retainers held by Case Professionals (as defined below)) and up to aggregate amount of the Carve-Out Cap (as defined below): (x) allowed and unpaid

074658.01343/22001202v.6

Case 5:11-bk-02032-RNO    Doc 57-1    Filed 04/01/11    Entered 04/01/11 11:09:27    Desc
Exhibit A    Page 17 of 30

professional fees and disbursements incurred by the Debtor and the Committee accruing after the date of the Carve-Out Trigger Notice for any professionals retained by either of them by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327 or 1103(a) of the Bankruptcy Code (the "**Case Professionals**") to the extent allowed and payable by the Debtor or the Committee pursuant to an order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) ("**Professional Fees**") under Sections 328, 330 and/or 331 of the Bankruptcy Code and any interim compensation procedures order, and (y) the "**Committee Expenses**," comprising allowed and unreimbursed expenses incurred by the members of the Committee accruing after the date of the Carve-Out Trigger Notice in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective). Without limiting the foregoing, the Professional Fees and Committee Expenses described in clause (ii) of this paragraph 2.3a (such amounts, the "**Case Professionals Carve-Out**) shall be subject to a cap in an aggregate amount not to exceed $350,000 (the "**Carve-Out Cap**") provided, however, that if at the time the Court has approved the allowance and payment of the Professional Fees and Committee Expenses, the Carve Out will not be available to the extent that the Debtor has other unencumbered or less than fully encumbered assets consisting of cash and cash equivalents out of which Professional Fees, Committee Expenses and Statutory Fees can be paid; and provided further, however, that if the Carve Out is used at any time as set forth herein and subsequently unencumbered assets of Debtor becomes available, the Agent and the Lenders shall be immediately reimbursed from such unencumbered

074658.01343/22001202v.6

assets for the release of their DIP Collateral proceeds for the purpose of funding the Carve Out prior to the use of such funds.

        a.        <u>No Direct Obligation to Pay Professional Fees or Committee Expenses</u>.  The Agent and Lenders shall not be responsible for the direct payment or reimbursement of any Professional Fees of any Case Professionals or any Committee Expenses or Statutory Fees incurred in connection with the Case.  Nothing in this Interim Order or otherwise shall be construed to obligate the Agent and Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the Carve-Out Cap if the actual (i) Professional Fees of any Case Professional or (ii) Committee Expenses are higher than the estimated fees and disbursements reflected in the Budget.

        b.        <u>Payments Prior to a Carve-Out Trigger Notice</u>. Prior to the delivery of the Carve-Out Trigger Notice, Debtor shall be permitted to pay to the Case Professionals compensation and reimbursement of expenses that accrued prior to the date of the Carve-Out Trigger Notice and in the ordinary course of the Debtor's business, and that are otherwise allowed and payable under section 328, 330 and 331 of the Bankruptcy Code and any interim procedures order entered by this Court, as the same may be due and payable but subject in any event to the times and amounts specified therefore in the Budget.

        c.        <u>Payment of Carve-Out After Carve-Out Trigger Notice</u>.  Any payment or reimbursement made on or after the delivery of the Carve-Out Trigger Notice in respect of any Professional Fees (exclusive of the application of any retainers by any of the Case Professionals) or Committee Expenses shall permanently reduce the Carve-Out Cap on a dollar-

074658.01343/22001202v.6

for-dollar basis. Any funding of the Carve-Out shall be added to and made a part of the Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Financing Documents, the Bankruptcy Code and applicable law.

        2.4    <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fees nor the proceeds of any Advances, Letters of Credit or DIP Collateral shall be used to pay any Professional Fees or any other fees or expenses incurred by any Case Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief preventing, hindering or delaying the Agent's or the Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any in accordance with the terms and conditions of this Interim Order, (b) a request to use Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of the Agent, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the Agent or the Lenders, without the prior written consent of the Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the Agent, any Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Agent or any Lender under Chapter 5 of the Bankruptcy Code, or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of the Agent or any Lender, or which is contrary, in a manner that is material

19

074658.01343/22001202v.6

Case 5:11-bk-02032-RNO   Doc 57-1   Filed 04/01/11   Entered 04/01/11 11:09:27   Desc
Exhibit A   Page 20 of 30

and adverse to the Agent or any Lender, to any term or condition set forth in or acknowledged by the DIP Financing Documents or this Interim Order and which results in the occurrence of an Event of Default under the DIP Financing Documents or this Interim Order.

Section 3.    <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "**<u>Event of Default</u>**" under this Interim Order:

a.    Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or

b.    An "Event of Default" under the DIP Credit Agreement or any of the other DIP Financing Documents.

3.2    <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence of and during the continuance of an Event of Default and without the need for any further Court Order unless specified herein: (i) Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Financing Documents; (ii) the Agent shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or the DIP Financing Documents, including, without limitation, (v) declaring all Obligations immediately due and payable, (w) immediately accelerating the Obligations, (x) immediately ceasing to extend Advances or provide or arrange for Letters of Credit on behalf of Debtor's, (y) subject to <u>Section 3.3</u> below, setting off any Obligations with DIP Collateral or proceeds in the Agent's possession, and (z) subject to <u>Section 3.3</u> below, enforcing any and all rights with respect to the DIP Collateral; and (iii) Debtor right to use Cash Collateral shall immediately cease.  The Agent and the Lenders shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor under any of the DIP Financing Documents, immediately upon or after the occurrence of an Event of

20

Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

       3.3    <u>Relief from Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the Agent and the Lenders to perform any act authorized or permitted under or by virtue of this Interim Order or DIP Financing Documents, including, without limitation, (a) to implement the DIP Facility arrangements authorized by this Interim Order and pursuant to the terms of the DIP Financing Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses under the DIP Financing Documents, and apply such payments to the Obligations pursuant to the DIP Financing Documents and this Interim Order.  In addition, and without limiting the foregoing, upon the occurrence and continuance of an Event of Default, and after providing three (3) business days' prior written notice thereof (the "**Enforcement Notice**") to counsel for Debtor, counsel for the Creditors' Committee (if appointed), and the U.S. Trustee, the Agent acting on behalf of itself and the other Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, DIP Financing Documents or applicable law as the Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the DIP Collateral or any other assets or properties of Debtor's Estates upon which the Agent, for the benefit of itself and the Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations.

074658.01343/22001202v.6

Notwithstanding the foregoing, prior to expiration of the Enforcement Notice period, the Debtor can cure an Event of Default (to the extent curable), and the Debtor and/or any Committee shall be entitled to seek and obtain an emergency hearing with the Court, at which the only issue the Debtor and/or any Committee shall be allowed to assert is whether an Event of Default actually occurred. The ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h) are waived.

Section 4.     Representations; Covenants; and Waivers.

4.1     Debtor's Waivers.  At all times during the Case, and whether or not an Event of Default has occurred, unless otherwise consented to by the Agent in writing in advance (and no such consent shall be implied from any other action, inaction or acquiescence by the Agent or any Lender), Debtor irrevocably waives any right that it may have to seek authority: (i) to use Cash Collateral of the Agent and the Lenders under Section 363 of the Bankruptcy Code; (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the Agent and the Lenders; (iii) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Obligations on the effective date of such plan; or (iv) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the Agent and the Lenders as provided in this Interim Order or the DIP Financing Documents or the Agent's and the Lenders' exercise of such rights or remedies.

4.2     Section 506(c) Claims.  Effective upon the earlier of (a) the entry of a Final Order approving the Motion or (b) the entry of an order extending the Interim Financing Period beyond thirty (30) calendar days after the date of this Interim Order (which entry, without the prior written consent of Agent, shall constitute an Event of Default) (such effectiveness to be

22

Case 5:11-bk-02032-RNO    Doc 57-1    Filed 04/01/11    Entered 04/01/11 11:09:27    Desc
Exhibit A    Page 23 of 30

retroactive to the date of entry of this Interim Order), no costs or expenses of administration which have or may be incurred in the Case at any time shall be charged against the Agent or any Lender, their respective claims or the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the Agent or any Lender).

      4.3   <u>Collateral Rights</u>.  Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

      4.3.1   no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral; and

      4.3.2   upon and after the occurrence of an Event of Default, and subject to the relief from the automatic stay as provided for herein, in connection with a liquidation of any of the DIP Collateral, the Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.

Section 5.   <u>Other Rights and Obligations</u>.

      5.1   <u>No Modification or Stay of this Interim Order</u>.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the DIP Financing Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of the Case (each, a "**<u>Subject Event</u>**"), (x) the acts taken by the Agent and the Lenders in accordance with this Interim Order, and (y) the Obligations incurred or arising prior to the

074658.01343/22001202v.6

Agent's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by the Agent and the Lenders in accordance with this Interim Order, and the liens and security interests granted to the Agent and the Lenders in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of the Agent and the Lenders pursuant to this Interim Order and the DIP Financing Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Interim Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

      5.2    <u>Power to Waive Rights; Duties to Third Parties</u>. The Agent and the Lenders shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the Agent and the Lenders (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s). Any waiver by the Agent or any Lender of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject the Agent or any Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtor to the Agent or any Lender.

      5.3    <u>Disposition of Collateral</u> Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by

24

the Agent or any Lender) and an order of this Court, except for sales of Debtor's Inventory in the ordinary course of their business.

5.4    <u>Inventory</u>.  Debtor shall not, without the prior written consent of the Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or any Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

5.5    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the Agent and the Lenders to pursue any and all rights and remedies under the Bankruptcy Code, DIP Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6    <u>Binding Effect</u>.

5.6.1    The provisions of this Interim Order, the DIP Financing Documents, the Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of the Agent and the Lenders provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim

074658.01343/22001202v.6

Case 5:11-bk-02032-RNO    Doc 57-1    Filed 04/01/11    Entered 04/01/11 11:09:27    Desc
Exhibit A    Page 26 of 30

Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing of the Case.

 5.6.2 Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and the Agent's and the Lenders' liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens and security interests in the DIP Collateral.

 5.6.3 In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of the Agent and the Lenders pursuant to this Interim Order with respect to the DIP Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

 5.6.4 This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case of Debtor. This Interim Order shall also inure to the benefit of the Agent, the Lenders, Debtor and their respective successors and assigns.

074658.01343/22001202v.6

5.7     Marshalling.  In no event shall the Agent or any Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

5.8     Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor, the Agent and the Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Financing Documents.

5.9     Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the applicable Petition Date immediately upon execution thereof.

5.10    Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h).  To the extent applicable, the twenty one (21) day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the 14 day stay of 6004(h) are hereby waived.

5.11    Retention of Jurisdiction.  The Court has and will retain exclusive jurisdiction to enforce this Interim Order according to its terms.

5.12    Limited Effect.  Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of the DIP Financing Documents and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Financing Documents.

5.13    Objections Overruled.  All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

Section 6.      Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for April __, 2011 at _____ before this Court.  Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for

074658.01343/22001202v.6

notices with this Court and to any Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (i) counsel for the Agent, Blank Rome LLP, One Logan Square, 130 N. 18th Street, Philadelphia, Pennsylvania 19103-6998; Attn: Regina Stango Kelbon, Esq., Fax: (215) 832-5507 and Michael C. Graziano, Esq., Fax: (215) 832-5387; (ii) counsel for Debtor, Gibbons P.C., One Gateway Center, Newark, NJ 07102-5310; Attn: Frank J. Vecchione, Esq., (iii) the Office of the United States Trustee for Region Three; (ii) the Debtor's twenty (20) largest unsecured creditors; (iv) those asbestos plaintiff firms asserting the 20 highest number of asbestos-related claims against the Debtor; (v) counsel to any Committee; and (vi) and those parties requesting notice pursuant to Bankruptcy Rule 2002 in accordance with Local Rule 2002-1(b); and shall be filed with the Clerk of the United States Bankruptcy Court for the Middle District of Pennsylvania, in each case, to allow actual receipt of the foregoing no later than _____, prevailing Eastern time.

**By the Court**

                                           _____

The Honorable Robert N. Opel II
United States Bankruptcy Judge

Dated: April \_\_, 2011

074658.01343/22001202v.6

# EXHIBIT A

**DIP FINANCING AGREEMENT**